393 So.2d 764 (1980)
LOUISIANA INSURANCE GUARANTY ASSOCIATION
v.
Sherman A. BERNARD, Commissioner of Insurance, Etc.
No. 13826.
Court of Appeal of Louisiana, First Circuit.
December 15, 1980.
*765 George Mathews, Charles A. Schutte, Jr., Baton Rouge, for plaintiff-appellee Louisiana Ins. Guaranty Association.
Robert D. Hamlett, Jr., Louisiana Dept. of Ins., Baton Rouge, for defendant-appellant Sherman A. Bernard, Commissioner of Insurance.
Gibson Tucker, Jr., New Orleans, for intervenor-appellant Regal Ins. Co.
Before COVINGTON, CHIASSON and LEAR, JJ.
CHIASSON, Judge.
Sherman A. Bernard, Commissioner of Insurance, defendant-appellant, and Regal Insurance Company, intervenor-appellant, appeal the judgment of the Nineteenth Judicial District Court reversing an order of the Commissioner denying a hearing, rescinding an order of merger and revoking a Certificate of Authority issued by the Commissioner to Regal.
Appellants' brief does not contain any "specifications of error." We glean from their argument in brief that they are contending:
(1) The procedures listed in La.R.S. 22:1387 are exclusive to the extent that the Louisiana Insurance Guaranty Association (LIGA) must utilize those procedures before taking any other action;
(2) The discretionary authority to grant or withhold a Certificate reposes on the Commissioner, who is not bound by the findings of one of his financial examiners.
We find no merits in any of appellants' arguments, including, in addition to those listed above, those dealing with the validity of the merger and of the Certificate issued to Regal.
All of appellants' contentions were presented to and correctly ruled upon by the District Court. We adopt the well written Reasons for Judgment of the District Court as our own and attach a copy hereto.
*766 The District Judge did not hold that the Commissioner is bound by the findings of his examiners, but rather held that the Commissioner is bound by the law dealing with the issuance of a Certificate of Authority.
We wish to make clear that the situation in this case, the invalidity of a merger order and of a Certificate of Authority, is to be distinguished from that in which a valid Certificate of Authority had been issued and thereafter the LIGA detects the authorized company is in financial distress.
For these reasons and those set forth by the District Judge, the judgment of the Nineteenth Judicial District Court is affirmed at appellants' costs.
AFFIRMED.
LOUISIANA INSURANCE GUARANTY * NUMBER 230,825 DIVISION "M"
ASSOCIATION
 *
 19TH JUDICIAL DISTRICT COURT
VERSUS *
SHERMAN A. BERNARD, COMMISSIONER * PARISH OF EAST BATON ROUGE
OF INSURANCE (APPEAL FROM AN
ADMINISTRATIVE HEARING, NUMBER
104 ON THE DOCKET OF THE *
COMMISSIONER OF INSURANCE) STATE OF LOUISIANA
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

WRITTEN REASONS FOR JUDGMENT
Petitioner, Louisiana Insurance Guaranty Association (the Association) seeks judicial review of an order of defendant Bernard, Commissioner of Insurance of the State of Louisiana (the Commissioner). It is asserted that the right of review in the Association's favor is found in La.R.S. 22:1360. If there is a right of review, it is conceded that the proper venue (as provided in the statute) is in the Nineteenth Judicial District Court. La.R.S. 22:1360.
Petitioner commenced this action by the filing of a petition for review, praying for a judgment reversing the Commissioner's order or in the alternative for a judgment remanding the matter to the Commissioner for further proceedings. Service upon the Commissioner was sought and obtained. No other pleadings were filed.
Upon the day set for hearing of this matter, however, an appearance was made by counsel for Roger Williams Insurance Company, Regal Insurance Company, and Regal Group, Inc., and a "brief in opposition to" the appeal of the Association was filed on the same day.
Following a stipulation by the interested parties that the matter was to be submitted to the court for decision on the basis of the transcript taken in the administrative proceedings before the Commissioner's representative, the court took the matter under advisement.
Because of the stipulation of the parties (a copy of that stipulation having been filed in the record by the court) and the absence of any responsive pleadings, the court treats the present posture of the matter as one of appeal by the Association, to which no formal answer is necessary.
The case presents issues of both a procedural and substantive nature. The procedural issue, for want of a better term, is one of standing of the Association to provoke a hearing and object to an action taken by the Commissioner. The substantive issue is whether the action taken by the Commissioner was within his authority. The procedural issue necessarily must be disposed of at the outset.
Procedural Issue of Standing
On May 9, 1979, the Association filed with the Commissioner a formal demand *767 for a hearing, for the purpose of challenging the Commissioner's order of April 10, 1979, approving the merger of Roger Williams Insurance Company into Regal Insurance Company. The Commissioner scheduled a hearing for May 31, 1979.
On the day fixed for the hearing, Regal appeared through counsel and filed various "responsive pleadings," such as a petition for intervention, an answer and various exceptions. The hearing was not held that day, but was continued until July 27, 1979. In the interim, Regal was permitted to intervene by the Commissioner's order of July 12, 1979. However, its exceptions of no right and no cause of action were referred to the merits and the other exceptions were overruled.
The hearing scheduled for July 27, 1979, was apparently not held. An evidentiary hearing was held, however, on August 17, 1979, before Louis Jordan, Hearing Officer. Ultimately, the hearing officer ruled that the exceptions of no right and no cause of action were meritorious and sustained them. The date of that ruling was November 6, 1979. On November 30, 1979, the Commissioner signed an order reflecting that ruling. On December 4, 1979, the Association filed the present petition for review.
The interested parties concede that the right of review must be found primarily in the language of La.R.S. 22:1360, which reads in pertinent part:
§ 1360. Review from commissioner of insurance's order
A. Any person aggrieved on account of any official action or threatened action of the commissioner of insurance, or of his failure to act if such failure is deemed to constitute an act under any provision of this Code, may demand a hearing thereon as provided in R.S. 22:1351, and may have the court review any order of the commissioner of insurance made pursuant thereto. The petition for such review shall be filed only in the district court in and for the parish of East Baton Rouge and shall be taken only from an order refusing a hearing or an order on hearing. Such action may be taken by any person aggrieved by such order refusing a hearing or by such order on hearing.

* * * * * *
The parties also apparently concede that the right to hearing is contained in La.R.S. 22:1351, which appears to have a similar standard:
§ 1351. Hearings
The commissioner of insurance, or any qualified employee of the insurance department designated by him for the purpose, may hold a hearing for any purpose within the scope of this Code as he may deem necessary. He shall hold a hearing.
(1) * * *
(2) Upon written demand for a hearing made by any person aggrieved by any act, threatened act, or failure of the commissioner of insurance to act, if such failure is deemed an act under any provision of this Code, or by any report, promulgation or order of the commissioner of insurance other than an order on a hearing of which such person was given actual notice or at which such person appeared as a party, or order pursuant to the order on such hearing.

* * * * * *
It follows that the right of the Association to ask for a hearing, and its right to ask this court for a review if dissatisfied with the outcome of the hearing, depends upon its characterization as a "person aggrieved" by an act of the Commissioner.
The Association was created by Act 81 of 1970. Act 81 creates the Association as "a nonprofit unincorporated legal entity." La.R.S. 22:1380. It is given certain mandatory duties, and among its powers is the power to "sue or be sued." La.R.S. 22:1382(2)(c). Also among its powers in the same portion of the statute is the power to "perform such other acts as are necessary or proper to effectuate the purpose of this Part." Moreover, La.R.S. 22:1378 provides that the entirety of Act 81 "shall by liberally construed to effect the purpose under... R.S. 22:1376, which shall constitute an aid and guide to interpretation."
*768 The purpose referred to, found in La.R.S. 22:1376, is
"... to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers."
From these provisions, the court concludes that the Association is clearly a "person" insofar as the Insurance Code is concerned. It would be difficult to conceive of an entity with the power to sue and be sued as other than a person in the legal sense. Indeed, it is not seriously contended that the Association is not such a person.
However, there is serious dispute as to whether the Association is "aggrieved" by the Commissioner's order of April 10, 1979. This matter cannot be resolved without a passing reference to the substance of the dispute. The Commissioner permitted the merger of Roger Williams Insurance Company with Regal Insurance Company. Roger Williams Insurance Company had apparently been authorized in April of 1977 to write bail bonds in Louisiana, a form of fidelity and surety insurance requiring $1,000,000.00 in capital and surplus. La. R.S. 22:71. Roger Williams was at the time a foreign insurer. In August of the same year, Roger Williams "converted" from a foreign insurer to a domestic insurer, which "conversion" is part of the matter under discussion. At about the same time, Regal Insurance Company was authorized to write only vehicle physical damage insurance, with a minimum capital and surplus requirement of $250,000.00.
The order of the Commissioner permitted Roger Williams to merge into Regal, and authorized Regal to service the obligations of Roger Williams of a fidelity and surety nature. The Association asserts that the merger is invalid for several reasons, primarily that the Insurance Code does not authorize a merger between two such entities and that the merger violates the capital and surplus requirements of La.R.S. 22:71(A) and (B).
It is against this factual background that the court must determine whether the Association is a person "aggrieved" by the Commissioner's order. The court has uncovered no Louisiana decision in which the phrase has been interpreted in this context, nor have the parties presented any such authority. It is worthy of note, however, that in Brown v. Bernard, 376 So.2d 1034 (La.App. 1st Cir. 1979), the District Attorney of East Baton Rouge Parish, as a plaintiff, challenged the "conversion" of Roger Williams from a foreign insurer to a domestic insurer. The opinion of the appellate court did not contain any discussion of his lack of standing to litigate the issues in question, and the record in the case reveals that the issue was never raised in the trial court. The basis of the District Attorney's challenge was indubitably the fact that Roger Williams Insurance Company had been certified to write bail bonds, and that the District Attorney had an interest in the solvency of an insurer authorized to write such bonds.
The decision in Brown v. Bernard, though not squarely dealing with the present plaintiff, is instructive on the issue of standing to challenge an order of the Commissioner. The statutes creating the Association reveal that the Association has an interest in the order of the Commissioner at least the equivalent of that of the District Attorney in Brown v. Bernard.
Among other purposes, the Legislature provided that the purpose of the creation of the Association was to "... avoid financial loss to claimants or policyholders because of the insolvency of an insurer" as well as to "... assist in the detection and prevention of insurer insolvencies ..." La.R.S. 22:1376. The Association, to that end, is required to assess member insurers certain amounts to cover insolvencies. La.R.S. 22:1382(1)(c). It is also mandated by the same section to assume the obligations of an insolvent insurer. Other specific duties are placed upon the Association, and it is granted, *769 among other discretionary powers, the power to "perform such other acts as are necessary or proper to effectuate the purpose" of the creating act.
The legislative intent in creation of the Association seems clear. Not only must it attempt to detect and prevent insolvencies, it must be responsible if they occur. It is authorized to take acts "necessary and proper" to effectuate this purpose and others, and the court is instructed to interpret that phrase and the entire act liberally to carry out that purpose. Following these tenets, we must conclude that an entity which must detect insolvencies and answer for them if they occur is "aggrieved" by an order of the Commissioner which might promote insolvency. The gravamen of the Association's complaint strikes at the heart of potential insurer insolvency: whether the Commissioner has followed the capital and surplus requirements of the insurance code. To conclude that the Association does not have standing to provoke a hearing upon such a complaint is to ignore the clear purpose of the statutes.
It is contended on behalf of Regal Insurance Group in its two-page opposition brief that no section of the insurance code applicable to the Association grants it the authority to do what it seeks to do in this proceeding. There is almost no discussion of the contention, but the court assumes that Regal Insurance Group is relying upon its earlier contentions in the hearing before the Commissioner (Tr. 12-22) that only La. R.S. 22:1387 can be used to define the Association's authority. Section 1387 begins simply, "To aid in the detection and prevention of insurer insolvencies ..." It proceeds to list a number of things which the board of directors of the Association shall do or may do if it suspects insolvencies. Counsel for Regal infers that the section is exclusive in nature, i. e., that the powers there granted are the only powers which the Association has in the face of suspected insolvency. Unfortunately for counsel's position, the section does not contain such an expression of exclusivity. And as demonstrated above, a reading of that section with the remainder of the act demonstrates that the powers granted in section 1387 must be supplementary in nature. Were it otherwise, other sections of the act would be rendered meaningless. The interpretation placed upon the act by counsel for Regal is too narrow and would do violence to the express purpose of the legislature in creating the Association.
Though Louisiana opinions have not discussed the meaning of "aggrieved person," some opinions in other jurisdictions have, and support the interpretation here given. In Mississippi Insurance Underwriting Association v. Standard Products, Inc., 271 So.2d 405 (Miss.1972), the plaintiff Association sought a review of the order of the Mississippi Insurance Commission instructing it to issue a certain policy. The Association appears to be a sort of "assigned risk pool" for certain types of property. It was created by statute and all insurers writing such insurance were mandated to participate and to bear the costs. A prospective insured requested coverage from the Association and was denied, on the ground that the Association felt the risk was beyond the scope of its statutory responsibility. The prospective insured appealed to the Insurance Commission, which ordered the issuance of the policy. The Association's request for review in the district court was dismissed, and it appealed to the Supreme Court of Mississippi. The issue was whether the Association was a person "aggrieved" by the Commission's order under Mississippi statutes. The supreme court held that it was, and that it had a right to appeal. The court commented:
If the Association is not a party to an appeal from an order of the Insurance Commission, the question arises, who would be the appellees if the Insurance Commission had upheld the decision of the Association and Standard (the prospective insured) had appealed to the Chancery Court of Jackson County. There would be no insurer because no policy would have been issued, but every property insurer doing business in the state would have a financial interest in *770 upholding the order of the Insurance Commission. It would therefore appear that all property insurers doing business in the state should be named as appellees. Certainly the legislature did not intend any such result. The legislature clearly intended that the decisions of the Insurance Commission concerning matters originating with the Association were subject to judicial review. The logical "person" to appeal this case is the Association who was ordered specifically by name to "provide insurance coverage" to Standard. Absent a clear statutory identification of "persons aggrieved" by the Insurance Commission's order, we hold that the Association may prosecute the appeal. 271 So.2d at 407.
A similar argument is made against the Association's petition in the present case. Counsel for Regal argues that since Roger Williams purportedly has never issued any policies, there is nothing about which the Association may complain. But this argument ignores the primary role and concern of the Association, which is to help prevent insolvencies without reference to whether the damaging conduct is already under way or is about to start.
Decisions in other states similarly permitting persons to sue as "aggrieved" by an administrative insurance decision are Massachusetts Association of Independent Insurance Agents and Brokers, Inc. v. Commissioner of Insurance, 367 N.E.2d 796 (Mass.1977) (association of agents and brokers has standing to present their collective objections to mass merchandising plan authorized by Commissioner of Insurance) and Cravey v. Southeastern Underwriters Association, 214 Ga. 450, 105 S.E.2d 497 (1958) (insurance rating organization created by statute to propose rates aggrieved by order of Commissioner of Insurance suspending rates after they had already been agreed upon). See also Couch on Insurance 2d, § 21:16. Indeed, the only decisions discovered in which complaints were dismissed involved persons whose grievances were remote at best, not at all approaching the complaint made by the Association in the present case. Nader v. Altermatt, 166 Conn. 43, 347 A.2d 89 (1974) (consumer advocate Ralph Nader and others without standing to object to purchase of Hartford Fire Insurance by IT&T); Virginia Association of Insurance Agents, 201 Va. 249, 110 S.E.2d 223 (1959) (association representing independent agents not aggrieved by ratesetting decision which included reference to commission to be paid to agents upon sale of policies; decision-making body had no authority over commission to be paid in any event, since this was a matter of private contract between the agents and the companies).
For the foregoing reasons, the court holds that, under the statutes, the Association is a person aggrieved by the order of the Commissioner, and that it has both a right to a hearing by the Commissioner and a right of review in this court of an order issued following such a hearing. It follows that the exceptions of no right and no cause of action sustained by the hearing officer are without merit and are therefore overruled.
The Merits
It is unnecessary to make extended comments about the merits of the controversy. Uncontroverted evidence at the hearing demonstrates that the various statutory requirements needed to support the Commissioner's order were not followed.
There are two actions of the Commissioner which the Association contests. The first is his approval of the merger between Roger Williams Insurance Company and Regal Insurance, and the second is the certificate of authority issued to Regal to write vehicle physical damage insurance. Both were contained in an order of April 10, 1979.

The Merger
Early in the year 1977, Roger Williams Insurance Company (a foreign insurer) requested a certificate of authority to issue fidelity and surety insurance (bail bonds only). It filed with the Commissioner a balance sheet, with the intention of satisfying the requirements of La.R.S. 22:71 and *771 22:981. These statutes require of a foreign insurer seeking to write such insurance a minimum total of paid-in capital and surplus of $1,000,000.00. The balance sheet of Roger Williams contained an asset figure of some $1.2 million and was examined by Examiners Robertson and Willis of the Commissioner's office.
Willis determined, and so advised the Commissioner and so testified at the hearing (Tr. 99-115), that the capital and surplus of Roger Williams was impaired in at least two particulars: (a) an asset of $600,000.00 in preferred stock was shown, a figure in excess of the 2%-of-assets maximum permitted by La.R.S. 22:844(A)(9); and in any event, the stock was valued at $40.00 per share when the Manual of the Securities Evaluation Office of the National Association of Insurance Commissioners fixed its value at $10.00 per share (and Roger Williams' own annual statement showed it at $18.00 per share). Willis' conclusion that the capital and surplus requirement had not been met by Roger Williams was presented to the Commissioner. About three months later, the Commissioner issued a certificate of authority to Roger Williams to write "bail bonds only." There is nothing in the record at the hearing to establish any change in the capital and surplus of Roger Williams in the interim between Willis' report and the Commissioner's order. Moreover, there is no evidence in the record to contradict Willis' testimony. Upon the record, the court must conclude that the capital and surplus of Roger Williams was impaired when its certificate of authority was issued, and the Commissioner's approval of the certificate was contrary to La.R.S. 22:71 and 22:981.
At this point, Roger Williams remained a foreign insurer and holder of an invalid certificate of authority to write bail bonds in Louisiana. About four months after the certificate was issued (about August 1, 1977), Roger Williams "converted" from a foreign insurer to a domestic insurer. Its "conversion" apparently consisted of amending its articles of incorporation to refer to a Louisiana domicile rather than its previous Rhode Island domicile.
The Insurance Code provides various steps which must be followed in order for an entity to become a domestic insurer. La.R.S. 22:31, 22:35. It also provides for certain payments for capital stock, and ownership of shares by directors. La.R.S. 22:72, 22:81. The record does not reveal that these steps were taken, and the court must conclude that the "conversion" was of no effect. Roger Williams remained a foreign insurer. Indeed, the conclusion of the trial judge in another division of this Court, affirmed by the First Circuit Court of Appeal, is identical on this point, i. e., that the conversion was without legal effect. Brown v. Bernard, 376 So.2d 1034 (La.App. 1st Cir. 1979).
By his order of April 10, 1979, the Commissioner purported to authorize a merger between Roger Williams Insurance Company and Regal Insurance Company. This can be seen in no other light than as the merger between a foreign insurer and another insurer. La.R.S. 22:731 authorizes mergers of domestic insurers under certain conditions and according to certain procedures. La.R.S. 22:732 extends other rights under the Insurance Code to insurers generally or persons purporting to be doing an insurance business here. But the same Section 732 specifically excludes from that general grant of authority mergers under Section 731. It follows clearly that Section 731 cannot be used to permit an insurer other than a domestic insurer to merge with another company. Since Roger Williams was not domestic insurer, there was no authority in the Commissioner to permit its merger with Regal under Section 731. Moreover, to the extent Regal will now service any bail bonds issued by Roger Williams, the merger may violate the requirements of La.R.S. 22:71. Counsel for Regal has not favored the court with citation of any other section under which the merger could be valid. Accordingly, the court holds that the purported merger between Roger Williams Insurance Company and Regal Insurance Company was invalid and it is rescinded.

*772 The Certificate of Authority Issued to Regal

In the order of April 10, 1979, the Commissioner authorized Regal Insurance Company to write vehicle physical damage insurance. The writing of such insurance requires a minimum of $250,000.00 in paidin capital and surplus. La.R.S. 22:71. The transcript and exhibits made available to this Court do not show that this requirement has been satisfied. Moreover, La.R.S. 22:1028 requires a domestic insurer to deposit $100,000.00 with the State Treasurer in money or governmental bonds prior to the issuance of a certificate of authority. The record and exhibits do not show that this requirement was satisfied prior to the issuance of the certificate. Indeed, the record affirmatively shows that the deposit had not been made in the name of Regal at the time of the hearing (Tr. 197-198).
In light of the evidence, this Court gave Regal Insurance Company fifteen days to comply with the capital and surplus requirement and with the deposit requirement of La.R.S. 22:1028. The Court has received no indication that this has been done.
The Court can only conclude that the certificate of authority issued to Regal Insurance on April 10, 1979, to write vehicle physical damage insurance was invalidly issued and must be rescinded.
Judgment will be signed accordingly.
Baton Rouge, Louisiana, this 2nd day of April, 1980.
/S/Charles William Roberts Judge, 19th Judicial District Court